AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

### for the
### Western District of Washington

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) |
| The Facebook account with user ID 100029718583930, more particularly described in Attachment A | ) ) ) |

Case No. MJ19-5082

`LODGED` `RECEIVED`
**MAY 22 2019**
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
DEPUTY

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, attached hereto and incorporated by reference herein.

located in the _____Northern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, attached hereto and incorporated by reference herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 841(a)(1) and 846 | Distribution of and Conspiracy to Distribute Controlled Substances |

The application is based on these facts:

See Affidavit of DEA Special Agent Steve Meyer.

☑ Continued on the attached sheet.

☑ Delayed notice of __365__ days (give exact ending date if more than 30 days: __05/21/2020__ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

**Steve Meyer, Special Agent**
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 5/22/2019

_____
*Judge's signature*

City and state:  Tacoma, Washington

**David W. Christel, United States Magistrate Judge**
*Printed name and title*

# AFFIDAVIT

STATE OF WASHINGTON    )
                               )   ss

COUNTY OF PIERCE        )

    I, Steven Meyer, Special Agent, Drug Enforcement Administration (DEA), United States Department of Justice, being first duly sworn on oath, depose and state:

## MY BACKGROUND AND QUALIFICATIONS

    1.    I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

    2.    I am a Special Agent with the Drug Enforcement Administration (DEA), and have been since March 2017. I am currently assigned to the Seattle Field Division, Tacoma Resident Office. Prior to my employment with the DEA, I worked as a Uniformed Officer with the Secret Service in Washington D.C., from June 2006 to April 2009. I received formal training at the DEA Basic Agent Training in Quantico, Virginia. The four-month Basic Academy included comprehensive, formalized instruction in, among other things: basic narcotic investigations, drug identification and detection, familiarization with United States narcotics laws, financial investigations and money laundering, identification and seizure of drug-related assets, organized crime investigations, physical and electronic surveillance, and undercover operations.

    3.    During the course of my law enforcement career, I have been involved in investigations of numerous criminal offenses, including the offenses involved in this current investigation. I have participated in criminal investigations of illicit drug trafficking organizations, ranging from street-level dealers to major dealers, to include Mexico-based drug trafficking organizations. These investigations have also included the unlawful importation, possession with intent to distribute, and distribution of controlled substances; the related laundering of monetary instruments; the conducting of monetary

AFFIDAVIT OF Steve Meyer - 1
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  transactions involving the proceeds of specified unlawful activities; and conspiracies

2  associated with criminal narcotics offenses.  These investigations have included use of

3  the following investigative techniques: confidential informants; undercover agents;

4  analysis of pen register, trap and trace, and toll records; physical and electronic

5  surveillance; wiretaps; and the execution of search warrants.  I have had the opportunity

6  to monitor, listen to, review transcripts and line sheets (prepared by linguists)

7  documenting the content of intercepted conversations involving the trafficking of

8  cocaine, heroin, methamphetamine, and other narcotics, by persons who used some form

9  of code to thwart law enforcement.  I have also interviewed defendants at the time of

10  their arrests and have debriefed, spoken with, or interviewed numerous drug dealers or

11  confidential sources (informants) at proffer interviews who were experienced in speaking

12  in coded conversations over the telephone.  I have gained knowledge regarding the

13  various methods, techniques, codes, and/or jargon used by drug traffickers in the course

14  of their criminal activities, including their use of cellular telephones and other electronic

15  devices to facilitate communications while avoiding law enforcement scrutiny.

16  **PURPOSE OF AFFIDAVIT**

17  4.      This Affidavit is submitted in support of an application for a search warrant

18  under Title 18, United States Code, Sections 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A)

19  to require Facebook to disclose to the government records and other information in its

20  possession, pertaining to the subscriber or customer associated with the following

21  Facebook account (previously referred to as SUBJECT ACCOUNT 11, as detailed

22  below):

23          a.      Facebook user ID 100029718583930, registered under the name

24  TOM RYAN.

25  5.      All of the requested information is stored at premises owned, maintained,

26  controlled, or operated by Facebook, a social networking company headquartered in

27  Menlo Park, California.  The information to be searched is described in the following

28

AFFIDAVIT OF Steve Meyer - 2
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  paragraphs and in Attachment B.  This is the second application for a search warrant for
2  SUBJECT ACCOUNT 11 in this investigation.

3        6.     Agents have identified Juan Andres CASTRO Valenzuela and his brother,
4  Florencio CASTRO Valenzuela (collectively, the CASTROs), as drug distribution
5  coordinators operating out of Sinaloa, Mexico.  Investigators believe the CASTROs are
6  directing drug operations in Western Washington, and possibly elsewhere in the United
7  States, from Mexico.  In order to communicate with distributors and drug customers in
8  the United States, the CASTROs utilize a variety of applications, to include Facebook.
9  To date, agents have identified approximately a dozen Facebook 'Subject Accounts'
10  connected to the CASTROs, to include SUBJECT ACCOUNT 11, and have received
11  court authorization to search their contents.  Recently, agents learned the CASTROs have
12  continued using Subject Account 11 for those same purposes.  This account contains
13  multiple Facebook friends confirmed to be drug customers of the CASTRO DTO.  As set
14  forth in more detail below, investigators are requesting authorization to search the
15  contents of SUBJECT ACCOUNT 11 (since the date of the last search warrant) for
16  evidence of the CASTRO DTO's drug trafficking and related criminal activities.

17                     **FACEBOOK INFORMATION STORAGE**

18        7.     I am aware from my experience and training, and consultation with other
19  investigators, of the following information about Facebook:

20        8.     Facebook owns and operates a free-access social networking website of the
21  same name, accessed at http://www.facebook.com.  Facebook allows its users to establish
22  accounts with Facebook, and users can then use their accounts to share written news,
23  photographs, videos, and other information with other Facebook users, and sometimes
24  with the general public.

25        9.     Facebook asks users to provide basic contact and personal identifying
26  information to Facebook, either during the registration process or thereafter.  This
27  information may include the user's full name, birth date, gender, contact e-mail
28  address(es), Facebook passwords, Facebook security questions and answers (for

AFFIDAVIT OF Steve Meyer - 3
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  password retrieval), physical address (including city, state, and zip code), telephone
2  numbers, screen names, websites, and other personal identifiers. Facebook also assigns a
3  user identification number to each account.

4       10.    I know from speaking with other law enforcement that "cookies" are small
5  files placed by a server (such as those used by Facebook) on a device to track the user
6  and potentially verify a user's authentication status across multiple sites or
7  webpages. This cookie could be unique to a particular account (e.g., the Facebook
8  account) or to a given device (e.g., the particular phone used to access the Facebook
9  account). The next time a user visits a particular site or server, the server will ask for
10  certain cookies to see if the server has interacted with that user before. Cookies can also
11  be used to determine "machine cookie overlap," or multiple accounts that have been
12  accessed by the same individual machine (e.g., two Facebook accounts that have been
13  accessed on the same phone). The machine cookie overlap thus allows Facebook to track
14  accounts that are "linked" to each other because the same user account (username on a
15  computer) on the same device accessed multiple Facebook accounts. This can identify
16  either multiple Facebook accounts used by the same person or different people sharing
17  the same user account and device. In either case, the machine cookie overlap means that
18  the users of the linked accounts are the same person or two people in close proximity to
19  each other (by virtue of them using the same device).

20       11.    Facebook users may join one or more groups or networks to connect and
21  interact with other users who are members of the same group or network. Facebook
22  assigns a group identification number to each group. A Facebook user can also connect
23  directly with individual Facebook users by sending each user a "Friend Request." If the
24  recipient of a "Friend Request" accepts the request, then the two users will become
25  "Friends" for purposes of Facebook and can exchange communications or view
26  information about each other. Each Facebook user's account includes a list of that user's
27  "Friends" and a "News Feed," which highlights information about the user's "Friends,"
28  such as profile changes, upcoming events, and birthdays.

AFFIDAVIT OF Steve Meyer - 4
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

12.     Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

13.     Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

14.     Facebook allows users to upload photos and videos. It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

15.     Facebook users can exchange private messages on Facebook with other users. These messages, which are similar to e-mail messages, are sent to the recipient's

AFFIDAVIT OF Steve Meyer - 5
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well

2  as other information.  Facebook users can also post comments on the Facebook profiles

3  of other users or on their own profiles; such comments are typically associated with a

4  specific posting or item on the profile.  In addition, Facebook has a Chat feature that

5  allows users to send and receive instant messages through Facebook.  These chat

6  communications are stored in the chat history for the account.  Facebook also has a Video

7  Calling feature, and although Facebook does not record the calls themselves, it does keep

8  records of the date of each call.

9       16.    If a Facebook user does not want to interact with another user on Facebook,

10  the first user can "block" the second user from seeing his or her account.

11       17.    Facebook has a search function that enables its users to search Facebook for

12  keywords, usernames, or pages, among other things.

13       18.    Each Facebook account has an activity log, which is a list of the user's

14  posts and other Facebook activities from the inception of the account to the present.  The

15  activity log includes stories and photos in which the user has been tagged, as well as

16  connections made through the account, such as "liking" a Facebook page or adding

17  someone as a friend.  The activity log is visible to the user but cannot be viewed by

18  people who visit the user's Facebook page.

19       19.    Facebook Notes is a blogging feature available to Facebook users, and it

20  enables users to write and post notes or personal web logs ("blogs"), or to import their

21  blogs from other services, such as Xanga, LiveJournal, and Blogger.

22       20.    In addition to the applications described above, Facebook also provides its

23  users with access to thousands of other applications on the Facebook platform.  When a

24  Facebook user accesses or uses one of these applications, an update about that the user's

25  access or use of that application may appear on the user's profile page.

26       21.    Some Facebook pages are affiliated with groups of users, rather than one

27  individual user.  Membership in the group is monitored and regulated by the

28  administrator or head of the group, who can invite new members and reject or accept

AFFIDAVIT OF Steve Meyer - 6
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  requests by users to enter.  Facebook can identify all users who are currently registered to
2  a particular group and can identify the administrator and/or creator of the group.
3  Facebook uses the term "Group Contact Info" to describe the contact information for the
4  group's creator and/or administrator, as well as a PDF of the current status of the group
5  profile page.

6      22.     Facebook uses the term "Neoprint" to describe an expanded view of a given
7  user profile.  The "Neoprint" for a given user can include the following information from
8  the user's profile:  profile contact information; News Feed information; status updates;
9  links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists,
10  including the friends' Facebook user identification numbers; groups and networks of
11  which the user is a member, including the groups' Facebook group identification
12  numbers; future and past event postings; rejected "Friend" requests; comments; gifts;
13  pokes; tags; and information about the user's access and use of Facebook applications.

14      23.     Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP
15  address.  These logs may contain information about the actions taken by the user ID or IP
16  address on Facebook, including information about the type of action, the date and time of
17  the action, and the user ID and IP address associated with the action.  For example, if a
18  user views a Facebook profile, that user's IP log would reflect the fact that the user
19  viewed the profile, and would show when and from what IP address the user did so.

20      24.     Social networking providers like Facebook typically retain additional
21  information about their users' accounts, such as information about the length of service
22  (including start date), the types of service utilized, and the means and source of any
23  payments associated with the service (including any credit card or bank account number).
24  In some cases, Facebook users may communicate directly with Facebook about issues
25  relating to their accounts, such as technical problems, billing inquiries, or complaints
26  from other users.  Social networking providers like Facebook typically retain records
27  about such communications, including records of contacts between the user and the

28

AFFIDAVIT OF Steve Meyer - 7
USAO 2017R01238

1   provider's support services, as well as records of any actions taken by the provider or
2   user as a result of the communications.

3       25.   Therefore, the computers of Facebook are likely to contain all the material
4   described above, including stored electronic communications and information concerning
5   subscribers and their use of Facebook, such as account access information, transaction
6   information, and other account information.  I believe such information is likely to
7   constitute evidence of the drug trafficking crimes currently under investigation.

8                           **SUMMARY OF PROBABLE CAUSE**

9       26.   The information set forth in this Affidavit consists of information I have
10  gathered and observed firsthand through the course of this investigation to date, as well
11  as information relayed to me by other law enforcement personnel, my review of law
12  enforcement reports, interviews of witnesses, and my review and analysis of toll records.
13  Since I am submitting this Affidavit for the limited purpose of obtaining authorization to
14  search SUBJECT ACCOUNT 11 as described herein, I have not included every fact
15  known to me concerning this investigation.  I have set forth only the facts that I believe
16  are essential to establish the necessary foundation for the issuance of such warrant.

17  *Background Information Regarding Investigation*

18      27.   Agents are investigating a drug trafficking organization (DTO) in Western
19  Washington they believe the CASTROs (the user(s) of SUBJECT ACCOUNT 11) and
20  their associates are operating.  The CASTRO DTO predominantly is involved in the
21  trafficking of fentanyl-laced imitation oxycodone pills, heroin (of differing purity), and
22  crystal methamphetamine.

23      28.   This investigation started as a local drug investigation by the Bremerton
24  Police Department in August 2017.  A confidential source (CS1) agreed to cooperate with
25  law enforcement in exchange for judicial considerations.  CS1 was arrested by members
26  of the Bremerton Police Department (BPD) Special Operations Group (SOG) for his/her
27  involvement in drug trafficking.  CS1 cooperated with SOG and provided them with
28  information about a group of Mexican drug traffickers who were distributing large

AFFIDAVIT OF Steve Meyer - 8
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  amounts of heroin in the Puget Sound region.  CS1 advised SOG that he/she had been

2  selling various controlled substances for several years and had been in contact with

3  several of the people within this group of Mexican drug traffickers, which agents have

4  identified as the CASTRO DTO.

5      29.   Within that organization, CS1 connected with a prominent drug trafficker

6  whom the CS knew as "Juan" or "Jose."  CS1 believed the individual he/she knew as

7  "Juan" was the local leader of the drug distribution at that time, and was later promoted

8  to a larger role in the DTO.  BPD Detective Jordan Ejde located a Facebook account

9  under the name of "Juan Andres CASTRO Valenzuela" (Subject Account 2, the target of

10  a prior search warrant issued by this Court)) that CS1 and other local suspected drug

11  dealers were associated with.  Det. Ejde questioned CS1 about the account and CS1

12  confirmed CASTRO was the male whom he/she referred to as "Juan" or "Jose."  CS1

13  also showed Det. Ejde messages confirming that CASTRO had been in (then) recent

14  contact with the CS, using Subject Account 2.  According to CS1 and the Facebook data

15  he/she provided, CS1 had been talking to CASTRO via Facebook Messenger for

16  purposes of making drug transactions since approximately June of 2016.

17      30.   A review of the CS's Facebook account showed CASTRO also contacted

18  CS1 from additional Facebook accounts under the names of "REBECA SPENCER"

19  (Subject Account 5), "ANNEL BAKER" (Subject Account 4), and "KATHERINE

20  THOMAS" (Subject Account 1).  All three of those accounts have also been the target of

21  search warrants issued by this Court.  A review of CS1's phone showed CASTRO also

22  used Mexican phone numbers 52-668-199-4039, 52-668-248-4230, 52-668-225-5890,

23  and 52-668-199-5533 to communicate with CS1 via text message and voice calls.

24  Subject Account 1 and phone number 52-668-199-4039 were CASTRO's most current

25  methods of drug related communications with CS1 (at that time).

26      31.   Det. Ejde and Special Agent (SA) Anthony DelVecchio confirmed

27  CASTRO's identity via the Washington State Department of Licensing (WADOL).

28  Specifically, CASTRO's WADOL photograph matches that of the individual depicted on

1  Subject Account 2. Furthermore, according to a law enforcement database, CASTRO
2  was involved as a suspected "cell head" for heroin distribution in the Everett area during
3  a DEA investigation that took place in 2012. SA DelVecchio researched this prior DEA
4  case and found that CASTRO was, in fact, the primary target of investigation within that
5  case.

6       32.     Based on how CASTRO first interacted with CS1, I believe CASTRO used
7  Subject Account 2 for initially contacting his suspected drug redistributors/customers.
8  When CASTRO first contacted the CS via Facebook Messenger, he used Subject
9  Account 2. After a brief introduction utilizing Subject Account 2, CASTRO switched
10  over to a more discrete account(s), e.g., Subject Account 4 and/or Subject Account 5, for
11  the actual organizing of the suspected drug transactions. I believe that by having a
12  picture of himself [CASTRO] as the account user for Subject Account 2, it helped his
13  redistributors/customers recognize him in addition to him building a rapport with them.

14       33.     CASTRO used Subject Account 1, Subject Account 2, Subject Account 4,
15  Subject Account 5, and an account under the name "ALISSA KEYSER" (Subject
16  Account 6, also the target of a search warrant issued by this Court), as well as various
17  telephone numbers, to set up drug deals with CS1.

18       34.     CS1 conducted seven controlled buys of suspected heroin from the
19  CASTRO DTO and was able to introduce an undercover DEA agent (UC) to the
20  CASTRO DTO towards the end of 2017. Unfortunately, CS1 was battling heroin
21  addiction for most of the time he/she was working with agents and admitted to obtaining
22  personal use quantities of heroin from the CASTRO DTO during and after some of the
23  controlled purchases. Following a brief period in rehabilitation/treatment, CS1 relapsed
24  into heroin use in the spring of 2018. In May 2018, local police arrested CS1 and
25  charged him/her with residential burglary (felony) and driving with a suspended or
26  revoked license (misdemeanor). SOG deactivated CS1 in May 2018 due to CS1's
27  substance abuse issues. However, agents found CS1's information to be reliable during
28  the time agents utilized him/her to gather information.

AFFIDAVIT OF Steve Meyer - 10
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

35.     CS1's criminal history includes a felony conviction for Manufacture/Deliver a Schedule I/II Narcotic in 2013, gross misdemeanor convictions for Third Degree Malicious Mischief and First Degree Criminal Trespass in 2018, Fourth Degree Assault in 2015, and Third Degree Malicious Mischief in 2011, as well as misdemeanor convictions for Second Degree Criminal Trespass and Possession of Drug Paraphernalia in 2018, and Third Degree Driving With a Suspended or Revoked License in 2018 and 2008, Indecent Exposure in 2013, and Third Degree Malicious Mischief in 2006.

***Undercover Controlled Purchases Utilizing Subject Account 1***

36.     In early November 2017, SOG provided DEA agents, including an undercover agent (the UC) with the various phone numbers and Facebook accounts they believed CASTRO and one of the DTO couriers used for drug trafficking purposes.

37.     On November 14, 2017, CS1 sent the UC an invitation to join a group Facebook Messenger chat session, which linked the UC in communication with Subject Account 1.  CASTRO and the UC then engaged in conversation regarding CASTRO's pricing for heroin.  On November 16, 2017, agents conducted an undercover purchase of heroin from CASTRO (through one of the DTO's couriers) in Tacoma, Washington.  The UC contacted CASTRO on 52-668-199-4039 (Target Telephone 1 or TT1) and through Subject Account 1 prior to this transaction in order to facilitate the meeting.  After the UC met with the courier and the transaction was completed, agents transported the suspected heroin to the DEA Tacoma Resident Office where it was weighed at approximately 87.4 gross grams.

38.     On November 27, 2017, the UC received a text message from CASTRO (TT1).  During this conversation, the UC and CASTRO discussed a future drug transaction for four ounces of heroin that would later occur on November 30, 2017.  On November 30, the UC again met with the DTO's courier, this time in Federal Way, Washington.  Prior to the controlled buy, the UC initiated a Facebook Messenger conversation with CASTRO through Subject Account 1.  Using Subject Account 1,

AFFIDAVIT OF Steve Meyer - 11
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  CASTRO told the UC that he changed the meet location from the Tacoma Mall to
2  Federal Way, Washington. After the UC arrived at the new meeting location, he/she
3  received two calls from CASTRO. Of note, Facebook Messenger has telephone call
4  capabilities as well as video chat. The first phone call came through Facebook
5  Messenger under Subject Account 1, and the second call came from TT1.

6      39.    The courier eventually arrived in at the new meeting location, and the UC
7  and the courier completed the transaction. Agents transported the suspected heroin to the
8  TRO where it was weighed at approximately 136.1 gross grams. Shortly after the UC
9  and the courier parted ways, CASTRO sent a large "thumbs up" graphic to the UC via
10  Subject Account 1, indicating a successful drug transaction.

11      40.    On December 15, 2017, at 11:16 a.m., the UC attempted to call CASTRO
12  via Subject Account 1 on Facebook Messenger. CASTRO did not answer the call, but
13  typed a response at 11:17 a.m. In those communications and others exchanged that day,
14  CASTRO and the UC arranged a deal to take place in Kent, Washington.

15      41.    At approximately 1:45 p.m., the UC observed a vehicle pull up and park
16  next to him. The UC exited his vehicle, got into the vehicle's front passenger seat, and
17  greeted the same DTO courier who delivered the heroin to the UC during the first two
18  controlled buys. The UC and the courier completed their transaction, and at 1:54 p.m.,
19  CASTRO sent a large "thumbs up" graphic to the UC via Subject Account 1 on Facebook
20  messenger.

21  ***Federal Search Warrant for Subject Account 1***

22      42.    On January 3, 2018, SA Samuel Landis obtained a search warrant from the
23  United States District Court for the Western District of Washington for Subject Account
24  1, believed to be used by CASTRO in order to network and facilitate suspected drug
25  transactions. On January 17, 2018, during a search of the Facebook Messenger portion of
26  the returned warrant materials, SA Landis found numerous suspected drug conversations
27  between CASTRO and individuals whom agents believe, based on the content of those

28

AFFIDAVIT OF Steve Meyer - 12
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   conversations and those individuals' respective criminal histories, are his drug

2   redistributors/customers.

3         43.     During a search of the "Cookies" portion of Subject Account 1, SA Landis

4   found Subject Account 3 and Subject Account 4 listed as accounts linked to Subject

5   Account 1.  On February 27, 2018, he contacted Facebook Support and asked how the

6   accounts linked to each other, based on the data Facebook had provided.  Facebook

7   Support staff informed him that Subject Account 1, Subject Account 3, and Subject

8   Account 4 were all accessed by the same electronic device (one that is capable of

9   accessing the World Wide Web) and under the same "cookie."  A "cookie" is a personal

10  identifier for a specific browser that links to particular web portal.  This means CASTRO

11  used the same electronic device to access Subject Account 1, Subject Account 3, and

12  Subject Account 4.  The electronic device CASTRO uses remembers his web signature or

13  "cookie" by storing his unique web browsing on Facebook.  Anytime CASTRO reuses

14  the same electronic device to browse the web, e.g., Facebook, the device remembers his

15  web identifiers for him.

16  **Federal Search Warrant for Subject Accounts 1 Through 6**

17        44.     On March 8, 2018, SA Landis obtained search warrants from the United

18  States District Court for the Western District of Washington for Subject Accounts 1

19  through 6, all of which he believed to be used by CASTRO in order to network and

20  facilitate suspected drug transactions.  On March 29, 2018, during a search of the

21  Facebook Messenger portion of Subject Accounts 1 through 3, and 5 through 6[1], of the

22  returned warrant materials, SA Landis again found numerous suspected drug

23  conversations between CASTRO and individuals whom agents believe are his drug

24  redistributors/customers.  Furthermore, during a search of the "Cookies" portion of

25  Subject Accounts 3 and 6, he found Subject Account 7 (registered under the name

26

27  _____

[1] According to the Facebook Law Enforcement Response Team, SA Landis' historical data request for Subject

28  Account 4 could not be processed because Subject Account 4 no longer existed.

AFFIDAVIT OF Steve Meyer - 13
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  "GINA MORRIS") listed as an account accessed by the same electronic device and under

2  the same "cookie" as the aforementioned accounts.

3        45.    When SA Landis looked at Subject Account 7's friends list (publicly

4  available on Facebook) and compared it to the other Subject Accounts' friend lists (with

5  the exception of Subject Account 4), he found that the accounts all had multiple friends in

6  common. Among the common friends were accounts that had been in contact with

7  Subject Account 1, Subject Account 5, and Subject Account 6 for the purposes of

8  organizing suspected drug transactions.

9  ***CASTRO Uses Subject Accounts 7 and 8 to Contact CS1***

10       46.    On April 9, 2018, CASTRO contacted CS1 using Subject Account 7 to

11  have CS1 help him register a white 2008 Honda Accord in Washington in exchange for

12  "stuff," or what SA Landis believed to be heroin.  CASTRO and CS1 arranged the

13  vehicle registration to take place on April 10, 2018.  At 10:17 a.m., CS1 electronically

14  shared his/her location with CASTRO and continued his/her messaging conversation with

15  CASTRO using Subject Account 7.  In the conversation, CS1 confirmed his/her current

16  location with CASTRO and, about twenty minutes later, agents saw another identified

17  DTO courier and a previously unseen Hispanic male (later confirmed the be the DTO's

18  replacement courier) arrive at CS1's location.

19       47.    After the registration process (and a subsequent lunch) was complete, the

20  couriers and CS1 met briefly in the parking lot, where the identified courier provided

21  CS1 with approximately 20 grams of suspected heroin.  CS1 met with SA DelVecchio

22  and Det. Ejde at a secure location and provided them with the 20 grams of suspected

23  heroin.  SA DelVecchio and Det. Ejde searched CS1 for contraband items and did not

24  find any items during that search.  CS1 later told SA DelVecchio and Det. Ejde that the

25  suspected heroin was the CS's "payment" for taking care of the vehicle registration and

26  insurance, as CS1 and CASTRO had discussed on April 9, 2018.

27       48.    SA Landis obtained a warrant from the United States District Court for the

28  Western District of Washington for Subject Account 7 on April 19, 2018.

AFFIDAVIT OF Steve Meyer - 14
USAO 2017R01238

49.     On April 27, 2018, CS1 contacted agents in regards to his/her recent contact with CASTRO.  According to CS1, he/she believed CASTRO created a new Facebook account in order to contact his suspected local drug contacts in the Western Washington area.  After agents acquired the account information from CS1, agents located Subject Account 8 (registered under the name "CHRIS HOLDFORD") on Facebook and, during a search of Subject Account 8's publicly available friends list, found that the majority of the people listed were also on the friends lists for Subject Accounts 1 through 7.  Given this similarity between all eight Subject Accounts and CASTRO's use of Facebook accounts to communicate with his drug clientele (including CS1) in order to set up drug deals, agents believe CASTRO created Subject Account 8 for the sole purpose of connecting with his suspected drug clientele in order to further his suspected drug transactions.

50.     On July 3, 2018, SA Landis obtained a search warrant from the United States District Court for the Western District of Washington for Subject Account 8, which he believed CASTRO used in order to network and facilitate suspected drug transactions.  On July 19, 2018, during a search of the Facebook Messenger portion of the returned warrant materials, SA Landis did not find any messages. This was highly unusual based on past UC interactions with CASTRO over Facebook Messenger and information previously gathered from the returned warrant materials for Subject Accounts 1 through 7.  SA Landis contacted Facebook support staff via email on July 20, 2018, to find out if there were any missing materials not included in the documents provided.  Days later, he received a phone call from Facebook's support staff.  During this call, SA Landis explained that in many of his previously authorized requests, he had not experienced the absence of information.  Facebook support staff told him the user of Subject Account 8 may have deleted all of the conversations over Facebook Messenger. According to Facebook's support staff, if a Subject Account user deletes his/her conversations over Facebook Messenger, Facebook cannot provide the information, even if a search warrant is executed on a Subject Account.  This is because Facebook simply

AFFIDAVIT OF Steve Meyer - 15
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1    does not store deleted Facebook Messenger messages/conversations.  However, with a

2    preservation request, Facebook can preserve materials deleted by a Subject Account user

3    and later produce them upon receipt of a court order (warrant).  With a preservation

4    request, Facebook will store any deleted conversations for any Subject Account for up to

5    90 days for law enforcement personnel.

6        51.    Despite the absence of Facebook Messenger materials for Subject Account

7    8 from the search warrant return, SA Landis did receive other data associated with the

8    Subject Account.  Specifically, the phone number (TT20) associated with Subject

9    Account 8 was one agents previously identified as being used by the CASTROs.  On July

10   10, 2018, agents conducted an undercover purchase of suspected heroin from the

11   CASTRO DTO, through the newest courier.  The UC contacted the CASTRO brothers

12   (on TT20) shortly after 11:00 a.m. and asked for "2 pieces" (or 50 grams) of heroin.  The

13   CASTROs agreed to do the deal for $2,150.  The subsequent transaction between the UC

14   and the courier lasted less than one minute.  The UC provided the courier with $2,150 of

15   DEA buy money and the courier provided the UC with a substance that field-tested

16   positive for the presence of heroin and weighed 83.4 gross grams (with packaging).

17   ***Discovery of Subject Accounts 9 and 10***

18       52.    During the search of the "Cookies" portion of the returned warrant

19   materials for Subject Account 8, SA Landis found Subject Account 1, Subject Account 3,

20   Subject Account 6, Subject Account 7, and an account under the name "RUDY

21   JACKSON" (Subject Account 9) listed as accounts accessed by the same electronic

22   device and under the same "cookie."  Again, this indicated a very high probability that

23   the same person(s) (i.e., the CASTROs) was using all of these Subject Accounts,

24   including Subject Account 9, since the same electronic device (i.e., computer, cell phone,

25   or the like) was accessing all of the accounts.

26       53.    When SA Landis examined Subject Account 9's publicly available friends

27   list and compared it to the other Subject Accounts' friend lists (with the exception of

28   Subject Account 4), he found that the accounts all had multiple friends in common.

AFFIDAVIT OF Steve Meyer - 16
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   Additionally, agents had previously identified most of these "friends" as suspected drug
2   customers, further indicating the CASTROs were utilizing Subject Account 9 as a means
3   of connecting with their suspected drug customers.

4       54.    On July 23, 2018, SA Landis submitted a preservation request for Subject
5   Account 9 in an effort to capture future suspected drug related conversations over Subject
6   Account 9, should the CASTROs continue their pattern of deleting Facebook Messenger
7   conversations as they had apparently done with Subject Account 8.

8       55.    On August 15, 2018, SA Landis obtained a search warrant from the United
9   States District Court for the Western District of Washington for Subject Account 9.  In
10  the returned materials, agents saw that Subject Account 9's friends list included seven
11  individuals who had a mutual friend named "steve.larson.750983" (Subject Account 10).
12  Comparison of Subject Account 10's publicly available friends list with the previous
13  Subject Accounts' "friends" lists (with the exception of Subject Account 4) revealed they
14  all had multiple friends in common.  Agents had previously identified most of these
15  "friends" as suspected drug customers of the CASTROs.

16      56.    Additionally, data from the Subject Account 9 search warrant included a
17  Mexican telephone number, 52-668-171-2538, which agents had previously identified as
18  being used by the CASTROs.  Based on phone toll analysis, 52-668-171-2538 was in
19  contact with Devon Meyer, who has consistently been on the friends lists for the Subject
20  Accounts discussed herein.  Meyer was also included on the friends list for Subject
21  Account 10, further indicating the CASTROs were the users of Subject Account 10.

22  ***Initial Discovery of SUBJECT ACCOUNT 11***

23      57.    On October 12, 2018, I obtained a search warrant from the United States
24  District Court for the Western District of Washington for Subject Account 10, which I
25  believe CASTRO used in order to network and facilitate suspected drug transactions.
26  During a search of the "Cookies" portion of the returned warrant materials, I found
27  Subject Account 6, Subject Account 3, Subject Account 9, and Subject Account 10 listed
28  as accounts accessed by the same electronic device and under the same "cookie."  Again,

AFFIDAVIT OF Steve Meyer - 17
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  this indicates a very high probability that the same person(s) (i.e., the CASTROs) was

2  using all of these Subject Accounts, including Subject Account 10, since the same

3  electronic device (i.e., computer, cell phone, or the like) was accessing all of the

4  accounts.

5        58.    When I examined Subject Account 10's friends list and compared it to the

6  other Subject Accounts' friend lists, I found that the accounts all had multiple friends in

7  common. Agents had previously identified most of these "friends" as suspected drug

8  customers, further indicating the CASTROs were utilizing Subject Account 10 as a

9  means of connecting with their suspected drug customers.

10        59.    A search of one customer's publicly available friends list showed he was

11  also friends with "TOM RYAN" (SUBJECT ACCOUNT 11). Agents looked at the

12  publicly available Facebook friends list for SUBJECT ACCOUNT 11, and saw that eight

13  of the ten friends had been identified in previous Subject Accounts as drug customers of

14  the CASTRO DTO.

15  ***Search Warrant for SUBJECT ACCOUNT 11 (TOM RYAN)***

16        60.    On November 9, 2018, the Honorable David W. Christel, Unites States

17  Magistrate Judge for the Western District of Washington, authorized a search warrant for

18  SUBJECT ACCOUNT 11.[2]  Agents received historic information from SUBJECT

19  ACCOUNT 11 on November 28, 2018. The historic information included a number of

20  drug related conversations with "friends" of SUBJECT ACCOUNT 11, including

21  previously identified DTO customers Jamie Whitttal, Joe Stanley, and Charles Joslyn. A

22  federal Grand Jury indicted Joslyn in December 2018 for his drug trafficking activities

23  with the DTO. Joslyn has since entered a guilty plea and is set to be sentenced on August

24  1, 2019. Joslyn's Facebook chat with SUBJECT ACCOUNT 11 indicated that Joslyn

25  had lost all his big suppliers in the area, but did not have the money to start out on his

26

27

28

[2] This Affidavit and Application thus seek information from SUBJECT ACCOUNT 11 created since November 9, 2018.

AFFIDAVIT OF Steve Meyer - 18
USAO 2017R01238

1  own.  Joslyn went on to say that he was living in "Bonney lake at my girl's house."

2  CASTRO responded by asking if Joslyn wanted to start with "half (12g)" and requested

3  an address.  Joslyn sent his girlfriend's 8422 214th Ave. E, Bonney Lake, Washington,

4  address.  Later that day, at 11:54 am, GPS tracking data indicated that the DTO courier

5  traveled to the 8422 214th Ave. E, Bonney Lake, Washington, residence and stopped for

6  less than five minutes.

7  ***Discovery of Subject Account 13***

8       61.     Between December 5, 2018 and December 7, 2018, agents executed federal

9  arrest and search warrants targeting the CASTRO DTO that resulted in more than 40

10  federal arrests, including multiple "friends" from Subject Accounts like Charles Joslyn.

11       62.     In early January 2019, believing that the DTO had reconstituted itself and

12  was again operating in Western Washington, agents attempted to identify a new Subject

13  Account by analyzing known "friends" from previous Facebook accounts the DTO used.

14  As a result, agents identified "larry.holton.1612" (Subject Account 13).

15       63.     On March 12, 2019, the Honorable Theresa L. Fricke, Unites States

16  Magistrate Judge for the Western District of Washington, authorized a search warrant for

17  Subject Account 13.  Agents received historic information from Subject Account 13 on

18  March 27, 2019.  The historic information confirmed CASTRO had searched on

19  Facebook for his associates arrested in December 2018, and had communicated with a

20  couple of customers from previous Subject Accounts.

21  ***SUBJECT ACCOUNT 11 (Tom Ryan) Re-evaluated***

22       64.     Between March and May 2019, agents conducted periodic searches of the

23  publicly available portions of SUBJECT ACCOUNT 11 and Subject Account 13.  Agents

24  determined that SUBJECT ACCOUNT 11 was continuing to add "friends," and appeared

25  to be in use, whereas, Subject Account 13 showed little activity and was likely not an

26  account the CASTROs were using.  On May 2, 2019, agents arrested an individual

27  known to be associated with the DTO.  This individual told agents the CASTRO DTO

28

AFFIDAVIT OF Steve Meyer - 19
USAO 2017R01238

1 | did not have a new Facebook page, and was still using an account in the name "Tom
2 | Ryan," i.e., SUBJECT ACCOUNT 11.

3 | **INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED**

4 |     65.    I anticipate executing this warrant under the Electronic Communications
5 | Privacy Act, in particular Title 18, United States Code, Sections 2703(a), 2703(b)(1)(A)
6 | and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the
7 | government copies of the records and other information (including the content of
8 | communications) particularly described in Section I of Attachment B. Upon receipt of
9 | the information described in Section I of Attachment B, government-authorized persons
10 | will review that information to locate the items described in Section II of Attachment B.

11 |     66.    As indicated in the Motion for Nondisclosure and Motion to Seal that
12 | accompany this Affidavit, the government requests, pursuant to the preclusion of notice
13 | provisions of Title 18, United States Code, Section 2705(b), that Facebook be ordered not
14 | to notify any person (including the subscriber or customer to which the materials relate)
15 | of the existence of this warrant for such period as the Court deems appropriate. The
16 | government submits that such an order is justified because notification of the existence of
17 | this Order would seriously jeopardize the ongoing investigation. Such a disclosure would
18 | give the subscriber an opportunity to destroy evidence, change patterns of behavior,
19 | notify confederates, or flee from prosecution. Notifying our targets of the existence of
20 | this investigation will likely cause them to destroy evidence, flee the jurisdiction, or alter
21 | their methods, thus making it more difficult to dismantle the organization effectively.
22 | Notice also could put the CS, UC, and agents working with them in danger

23 |     67.    I am further respectfully requesting that this Court issue an order sealing all
24 | papers submitted in support of this application, including the application and search
25 | warrant, until such dates as provided in the proposed Order. I believe that sealing this
26 | document is necessary because the items and information to be seized are relevant to an
27 | ongoing investigation. Premature disclosure of the contents of this Affidavit and related

28 |

AFFIDAVIT OF Steve Meyer - 20
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  documents may have a significant and negative impact on the continuing investigation
2  and may severely jeopardize its effectiveness.

3  **COMMON CHARACTERISTICS OF DRUG TRAFFICKERS**

4      68.    Based on my training and experience, including experience obtained
5  through participation in this and other investigations involving the distribution of
6  controlled substances, including those targeting long-term conspiracies responsible for
7  the distribution of controlled substances, and based upon my consultation with other
8  experienced law enforcement agents and officers, I know that:

9      a.    Drug trafficking conspiracies, especially those involving large amounts of
10  narcotics and interstate shipments, usually take place over several months or years, and
11  continue to operate even when enforcement activity results in arrests and/or seizures of
12  drugs and/or money.

13      b.    Those involved in the distribution of illicit drugs often communicate by
14  telephone in connection with their illegal activities in order to set up meetings with
15  coconspirators, conduct drug transactions, or to arrange for the transportation drugs or
16  drug proceeds.

17  **CONCLUSION**

18      69.    Based upon the information which has been uncovered during the course of
19  this investigation, and on the advice, experience, knowledge of other agents and officers
20  involved in this investigation, I believe these facts establish probable cause to conclude
21  that SUBJECT ACCOUNT 11 has been used, and will continue to be used, to facilitate
22  violations of the Controlled Substances Act, specifically

23  //
24  //
25  //
26
27
28

AFFIDAVIT OF Steve Meyer - 21
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   distribution of narcotics, conspiracy, and related offenses in the Western District of

2   Washington, and elsewhere, in violation of the Controlled Substances Act, Title 21,

3   United States Code, Sections 841 and 846.

4

5                                               STEVE MEYER,

6                                               Special Agent

7                                               Drug Enforcement Administration

8

9   Subscribed and sworn to before me this _22ᴺᴰ_ day of May, 2019.

10

11

12                                               DAVID W. CHRISTEL

13                                               UNITED STATES MAGISTRATE JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the following account, identified by Facebook user ID: 100029718583930 (SUBJECT ACCOUNT 11), for all such information that is stored at premises owned, maintained, controlled, or operated by Facebook, a company headquartered in Menlo Park, California.  This warrant is limited to information created after November 9, 2018.

AFFIDAVIT OF Steve Meyer - 23
USAO 2017R01238

# ATTACHMENT B

## Particular Things to be Seized

**I.      Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook, including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under Title 18, United States Code, Section 2703(f), Facebook is required to disclose the following information to the government for the user IDs listed in Attachment A (SUBJECT ACCOUNT 11):

A.  The following information about the customer or subscriber of SUBJECT ACCOUNT 11:

    (a)    All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

    (b)    All activity logs for SUBJECT ACCOUNT 11, and all other documents showing the user's posts and other Facebook activities;

    (c)    All photos and videos in their original format, including EXIF information (metadata), uploaded by that user ID and all photos and videos in their original format, including EXIF information (metadata), uploaded by any user that have that user tagged in them;

    (d)    All other records of communications and messages made or received by the user, including all private messages, chat history, calling history, and pending "Friend" requests;

    (e)    All "check ins" and other location information;

    (f)    All IP logs, including all records of the IP addresses that logged into SUBJECT ACCOUNT 11;

AFFIDAVIT OF Steve Meyer - 24
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

(g)   All past and present lists of friends created by SUBJECT ACCOUNT 11;

(h)   All records of Facebook searches performed by SUBJECT ACCOUNT 11;

(i)   The length of service (including start date);

(j)   The means and source of payment for such service (including any credit card or bank account number) and billing records;

(k)   All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken;

(l)   Names (including subscriber names, Facebook user IDs, and screen names);

(m)   Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

(n)   Local and long distance telephone connection records;

(o)   Linked accounts; and

(p)   Telephone or instrument numbers or identities (including MAC addresses).

B.   All records and other information (not including the contents of communications) relating to SUBJECT ACCOUNT 11, including:

(a)   Records of user activity for each connection activity for each connection made to or from SUBJECT ACCOUNT 11, including log files; messaging logs; the date, time, length, and method of connections; data transfer volume; user names; and source and destination of Internet Protocol addresses;

(b)   Information about each communication sent or received by SUBJECT ACCOUNT 11, including the date and time of the communication, the method of the communication (such as source and destination email addresses, IP addresses, and telephone numbers); and

(c)   Records of any Facebook accounts that are linked to SUBJECT ACCOUNT 11 by machine cookies (meaning all Facebook user IDs that

AFFIDAVIT OF Steve Meyer - 25
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1        logged into Facebook by the same machine or device as SUBJECT

2        ACCOUNT 11).

3 **II.     Information to be seized by the government**

4        All information described above in Section I that relates to the ongoing narcotics

5 investigation described in the Affidavit, including, for the user ID identified on

6 Attachment A, information pertaining to the following matters:

7             (a) Any content including e-mails, messages, texts, photographs (including

8                  metadata), videos (including metadata), visual images, documents,

9                  spreadsheets, address lists, contact lists or communications of any type

10                  which could be used to identify the user and or their location.

11             (b) Records relating to who created, used, or communicated with the user ID,

12                  including records about their identities and whereabouts.

13             (c) All subscriber records associated with SUBJECT ACCOUNT 11, including

14                  names, addresses, local and long distance telephone connection records, or

15                  records of session times and durations, length of service (including start

16                  date) and types of service utilized, telephone or instrument number or other

17                  subscriber number or identity, including any temporarily assigned network

18                  address, and means and source of payment for such service including any

19                  credit card or bank account number.

20             (d) Any and all other log records, including IP address captures, associated

21                  with SUBJECT ACCOUNT 11; and

22             (e) Any records of communications between Facebook and any person about

23                  issues relating to the account, such as technical problems, billing inquiries,

24                  or complaints from other users about SUBJECT ACCOUNT 11.  This is to

25                  include records of contacts between the subscriber and the provider's

26                  support services, as well as records of any actions taken by the provider or

27                  subscriber as a result of the communications.

28

AFFIDAVIT OF Steve Meyer - 26
USAO 2017R01238